NITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| ARISTA RECORDS, LLC, *et al*., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Civ. No. 07-162-B-W |
| | ) | |
| DOES 1-27, | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON MOTIONS TO DISMISS**

A cadre of owners and licensees of certain copyrighted sound recordings, including Arista Records, Atlantic Recording, BMG Music, Capitol Records, Elektra Entertainment, Motown Record Company, Sony BMG Music Entertainment, Virgin Records America and Warner Bros. Records, brought this copyright infringement action against a collection of University of Maine students, identified to date only as Does 1-27[1] having certain IP addresses provided by the University, for their alleged use of an online media distribution system to unlawfully download and/or distribute various copyrighted works. The owners and licensees (collectively referred to as "the Plaintiffs") request in their complaint injunctive relief and statutory damages, plus reimbursement for the costs and attorney fees required to bring this action. Nine of the Doe Defendants have moved to dismiss the complaint (doc. nos. 10 & 18) and the Court has referred their motions to me for a recommended decision. Based on my review of the pleadings and legal memoranda, I recommend that the Court deny their motions.

---

[1] To date, the Plaintiffs have voluntarily dismissed their claims against four of the Doe Defendants.

**The Allegations**

The material allegations that underlie the current action are as follows:

20.  Although Plaintiffs do not know the true names of Defendants, each Defendant is alleged to have committed violations of the same law (e.g., [sic] copyright law), by committing the same acts (e.g., [sic] the downloading and distribution of copyrighted sound recordings owned by Plaintiffs), and by using the same means (e.g., [sic] a file-sharing network) that each Defendant accessed via the same ISP.  Accordingly, Plaintiffs' right to relief arises out of the same series of transactions or occurrences, and there are questions of law or fact common to all Defendants such that joinder is warranted and appropriate here.

## COUNT I

## INFRINGEMENT OF COPYRIGHTS

21.  Plaintiffs incorporate herein by this reference each and every allegation contained in each paragraph above.

22.  Plaintiffs are, and at all relevant times have been, the copyright owners or licensees of exclusive rights under United States copyright law with respect to certain copyrighted sound recordings, including, but not limited to, all of the copyrighted sound recordings on Exhibit A to this Complaint (collectively, these copyrighted sound recordings shall be identified as the "Copyrighted Recordings).  Each of the Copyrighted Recordings is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights to each Plaintiff as specified on each page of Exhibit A.

23.  Among the exclusive rights granted to each Plaintiff under the Copyright Act are the exclusive rights to reproduce the Copyrighted Recordings and to distribute the Copyrighted Recordings to the public.

24.  Plaintiffs are informed and believe that each Defendant, without the permission or consent of Plaintiffs, has continuously used, and continues to use, an online media distribution system to download and/or distribute to the public certain of the Copyrighted Recordings.  Exhibit A identifies on a Defendant-by-Defendant basis (one Defendant per page) the IP address with the date and time of capture and a list of copyrighted recordings that each Defendant has without the permission or consent of Plaintiffs, downloaded and/or distributed to the public.  Through his or her continuous and ongoing acts of downloading and/or distributing to the public the Copyrighted Recordings, each Defendant has violated Plaintiffs' exclusive rights of reproduction and distribution.  Each Defendant's

actions constitute infringement of Plaintiffs' copyrights and/or exclusive rights under copyright.  (In addition to the sound recordings listed for each Defendant on Exhibit A, Plaintiffs are informed and believe that each Defendant has without the permission or consent of Plaintiffs, continuously downloaded and/or distributed to the public additional sound recordings owned by or exclusively licensed to Plaintiffs or Plaintiffs' affiliate record labels, and Plaintiffs believe that such acts of infringement are ongoing.  Exhibit A includes the currently-known total number of audio files being distributed by each Defendant.)

25.  Plaintiffs have placed proper notices of copyright pursuant to 17 U.S.C. § 401 on each respective album cover of each of the sound recordings identified in Exhibit A.  These notices of copyright appeared on published copies of each of the sound recordings identified in Exhibit A.  These published copies were widely available, and each of the published copies of the sound recordings identified in Exhibit A was accessible by each Defendant.

26.  Plaintiffs are informed and believe that the foregoing acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiffs.

* * * *

(Compl. for Copyright Infringement, Doc. No. 1.)  The Exhibit A filed by the Plaintiffs as an attachment to their complaint does not supply any information concerning sound recordings on a defendant-by-defendant basis.  Instead, the complaint's Exhibit A simply lists the IP address associated with each of the Doe Defendants.  The Exhibit A to which the complaint refers was filed on the same date as the complaint, but is identified as Exhibit A to AO Form 121, which is a report directed to the Register of Copyrights, informing the Register pursuant to 17 U.S.C. § 508 that a copyright action was filed with respect to the copyrighted works.[2]  (See Doc. No. 5.)  That exhibit is a 27-page list—one page per original Doe Defendant—that identifies a peer-to-peer network (in each case

---

[2]     The onus of preparing the report is placed on the Clerk, not on the Plaintiffs.  See 17 U.S.C. § 508.

Gnutella), a number of "total audio files"[3] (ranging from 81 to 2903, depending on the defendant) and a list of between 6 and 10 specific copyrighted works for each Doe Defendant.  This exhibit is referenced in the complaint and is therefore something that the Court may consider in ruling on the 12(b)(6) motion, without converting the motion into a motion for summary judgment.  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)

In conjunction with the filing of the complaint, the Plaintiffs also filed on the same date an *ex parte* motion for leave to take immediate discovery through a Rule 45 subpoena served on the University, in order to identify the Doe Defendants.  (Doc. No. 4.)  That motion was granted, subject to the restriction that the Plaintiffs include a court-approved notice with their subpoena and instructions that the University provide advance notice to the Doe Defendants of the existence of the subpoena and not respond to the subpoena prior to 14 days following receipt of the notice by each Doe Defendant.  (Doc. No. 6.)

In support of their *ex parte* motion, the Plaintiffs submitted the Declaration of Carlos Linares, yet another "Exhibit A."  (Doc. No. 4, Ex. A.)  The Linares Declaration articulates how peer-to-peer file sharing works and how the Plaintiffs came to target the Doe Defendants.  I have excerpted portions of the declaration for purposes of background, though I do not "incorporate" the declaration for purposes of determining whether the complaint satisfies the notice pleading requirements of the Federal Rules of Civil Procedure.

---

[3]       It is not plainly apparent what the "total audio files" number refers to, though one plausible inference is that it is the number of audio files each Doe Defendant made available to the public on his or her computer during one or more "sessions" using the Gnutella peer-to-peer file swapping program.  That inference is supported by the Declaration of Carlos Linares, attached to the Plaintiffs' *ex parte* motion for leave to take discovery.  (Doc. No. 4, Ex. A.)

### DECLARATION OF CARLOS LINARES
### IN SUPPORT OF *EX PARTE* MOTION FOR LEAVE
### TO TAKE IMMEDIATE DISCOVERY

* * * *

### The Internet and Music Piracy

* * * *

6.  Much of the unlawful distribution of copyrighted sound recordings over the Internet occurs via "peer-to-peer" ("P2P") file copying networks or so-called online media distribution systems. . . .  These include KaZaA, eDonkey, iMesh, Ares, BitTorrent, DirectConnect, and Gnutella, among others.  To this day, some P2P networks continue to operate and to facilitate widespread copyright piracy.  . . . .

7.  P2P networks, at least in their most popular form, refer to computer systems or processes that enable Internet users to:  (1) make files (including audio recordings) stored on a computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet.  P2P networks enable users who otherwise would have no connection with, or knowledge of, each other to offer to each other for distribution and copying files off of their personal computers, to provide a sophisticated search mechanism by which users can locate these files for downloading, and to provide a means of effecting downloads.

* * * *

### The RIAA's Identification of Copyright Infringers

11.  In order to assist its members in combating copyright piracy, the RIAA retained a third-party investigator, MediaSentry, Inc. ("MediaSentry"), to conduct searches of the Internet, as well as file-copying services, for infringing copies of sound recordings whose copyrights are owned by RIAA members.  A search can be as simple as logging onto a P2P network and examining what files are being offered by others logged onto the network.  In gathering evidence of copyright infringement, MediaSentry uses the same functionalities that are built into P2P programs that any user of the software can use on the network.

12.  Users of P2P networks who distribute files over a network can be identified by using Internet Protocol ("IP") addresses because the unique IP address of the computer offering the files for distribution can be captured by another user during a search or a file transfer.  Users of P2P networks can be identified by their IP addresses because each computer or network device (such as a router) that connects to a P2P network must

have a unique IP address within the Internet to deliver files from one computer or network device to another.  Two computers cannot effectively function if they are connected to the Internet with the same IP address at the same time.  This is analogous to the telephone system where each location has a unique number.  . . . .  Each computer or network device is connected to a network that is administered by an organization like a business, ISP, college, or university, [which] can identify the P2P network user associated with the specified IP address.

13.  MediaSentry finds individuals using P2P networks to share music files over the Internet.  Just as any other user on the same P2P would be able to do, MediaSentry is able to detect the infringement of copyrighted works and identify the users' IP addresses because the P2P software being used by those individuals has file-sharing features enabled.

14.  For each suspected infringer, MediaSentry downloads a number of the music files that the individual is offering to other users on the P2P network.  Those music files for each such individual are listed in Exhibit A to the Complaint.  MediaSentry assigns an identification number to each individual for which it detects copyright infringement and gathers additional evidence for each individual, such as metadata accompanying each file being disseminated that demonstrates that the user is engaged in copyright infringement.  That evidence includes download data files that show for each music file the source IP address, user logs that include a complete listing of all files in the individual's share folder at the time, and additional data that track the movement of the files through the Internet.

15.  After MediaSentry collects the evidence of infringement, the RIAA engages in a painstaking process to verify whether each individual was infringing.  That process relies on human review of evidence supporting the allegation of infringement.  For each suspected infringer, the RIAA reviews a listing of the music files that the user has offered for download by others from his or her computer in order to determine whether they appear to be copyrighted sound recordings.  The RIAA also listens to the downloaded music files from these users in order to confirm that they are, indeed, illegal copies of sound recordings whose copyrights are owned by RIAA members.  Exhibit A to the Complaint lists the details of these downloaded music files.  . . . .

\* \* \* \*

(Linares Decl., Doc. No. 4-3.)

**Discussion**

The Doe Defendants maintain that the allegations of the complaint are deficient because they fail to set forth any plausible, non-speculative basis to infer that the Doe Defendants' mere usage of the Gnutella P2P system was unlawful.  (Mot. to Dismiss Mem. at 1-2, Doc. No. 15.)  They seek to capitalize on what they regard as a major shift in the notice pleading standard of the Federal Rules or, more particularly, the standard governing when it is appropriate for a court to infer the presence of unstated facts in order to determine whether a claim for relief has been adequately alleged for purposes of Rule 8(a) and Rule 12(b)(6).  (Id. at 3, citing Bell Atl. v. Twombly, 127 S. Ct. 1955 (2007).) Thus, they assert:

> One year ago, there would have been no question but that the conclusory complaint filed by plaintiffs here satisfied the "short and plain statement" requirement of F.R.Civ. P. 8.  However, the Supreme Court has recently provided lower courts with a new and significant construction of that rule with its decision in *Bell Atlantic v. Twombly*[.]

(Id.)  In Twombly, the Supreme Court considered whether an action was sufficiently alleged under § 1 of the Sherman Act, which prohibits conspiracies in restraint of trade, based on factual allegations limited to parallel business conduct and a bare, conclusory allegation of conspiracy.  127 S. Ct. at 1961.  The Second Circuit had held that the pleadings were adequate to state a claim because the defendants had failed to demonstrate that there was "no set of facts" consistent with the allegations of parallel conduct that might be discovered in support of a finding of an actual agreement in restraint of trade. Id. at 1963; Twombly v. Bell Atl., 425 F.3d 99, 114 (2d Cir. 2005).  The Supreme Court reversed this determination and concluded that it was time to retire the hackneyed "no set of facts" phrase insofar as it had come to be interpreted by some courts as describing a minimum pleading standard.  Twombly, 127 S. Ct. at 1969 & n.8 (describing what the

Court regards as the real meaning of the phrase, as originally used in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  In its place, and in place of various other verbiage developed over the years to describe what amounts to fair notice under Rule 8(a), the Court lighted upon "plausibility"[4] as the touchstone for judging inferences that must be drawn in order to credit conclusory allegations.  <u>Id.</u> at 1965, 1970, 1974.  Nothing in <u>Twombly</u> forbids lower courts from drawing inferences or accepting conclusory recitations as true for purposes of a motion to dismiss, so long as the factual content that is supplied in the complaint demonstrates the plausibility of any necessary inferences.  This is in keeping with the holding of <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002), another significant, recent opinion addressing the notice pleadings standard, in which the Supreme Court held that a plaintiff is not required to plead specific facts supporting each and every element of a prima facie discrimination claim, <u>id.</u> at 513-15, and suggested that a motion for a more definite statement is the more appropriate route for defendants to take if lack of fair notice is their real concern, <u>id.</u> at 514.  The Swierkiewicz Court flatly observed that, when it comes to judging pleadings, Rule 8(a) requires only that the plaintiff "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," <u>id.</u> at 512 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)), and that the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims," <u>id.</u>  I now consider whether the well-pleaded facts in the complaint state a claim of copyright infringement when coupled with every reasonable (<u>i.e.</u>, plausible) inference in the Plaintiffs' favor.

---

[4]        The Court offered plausibility in contradistinction to conceivability.

Pursuant to the Copyright Act:  "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."  17 U.S.C. § 102(a).  Owners of copyrights have certain exclusive rights in the work, including the right to reproduce the copyrighted work.  Id. § 106(1).  One infringes a copyright by, among other things, violating either the owner's exclusive right to reproduce the copyrighted work or the exclusive right to distribute the work publicly.  Id. § 106(1), (3).  Either violation gives the owner of the copyright a right to sue for infringement.  17 U.S.C. § 501.  There are but two necessary elements in a claim of copyright infringement:  (1) copyright ownership in the plaintiff and (2) violation of one of the copyright owner's exclusive rights by the defendant.  Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007); 17 U.S.C. §§ 106, 501.

The Plaintiffs' complaint asserts that the Doe Defendants downloaded, reproduced and/or distributed copyrighted sound recordings owned or leased by the Plaintiffs using a file-sharing network.  (Compl. ¶¶ 20, 22, 23.)  They further allege that the Doe Defendants did so and continue to do so with members of the general public, without the permission of the Plaintiffs, giving rise to "infringement" of their "exclusive rights of reproduction and distribution."  (Id. ¶ 24.)  They incorporate by reference a list of additional allegations that the Doe Defendants utilized the Gnutella file-swapping program to make available for distribution between 81 and 2903 songs, including at least six songs per Doe Defendant that are subject to the Plaintiffs' copyright interests.  (Id., citing "Exhibit A.")

The Doe Defendants argue that the Plaintiffs have failed to allege specific facts that, if proven, would tend to establish that the alleged distribution or reproduction was infringing.  Apparently recognizing that the allegations of reproduction and distribution of the Plaintiffs' copyrighted song recordings are *factual* allegations that the Court must take as true for purposes of a motion to dismiss, the argument is that an objective person reviewing the complaint and the incorporated exhibit cannot rule out the possibility that the alleged distribution and reproduction was somehow permitted or otherwise lawful, since no facts are alleged that would tend to disprove any lawful use.  (Mot. to Dismiss at 5-6.)  To be sure, it is conceivable that the Doe Defendants only used the Gnutella P2P software to download copyrighted song recordings that they already owned or to distribute song recordings exclusively to people who already owned them in the CD format.  Nevertheless, it is a perfectly plausible inference that the alleged reproduction and distribution of the Plaintiffs' copyrighted song recordings over the peer-to-peer network constituted infringement.  Moreover, inferences aside, it is not the Plaintiffs' pleading burden to set forth allegations that might overcome an affirmative defense, only to set forth enough factual detail to generate a plausible claim that their exclusive rights of reproduction and distribution were violated by the Doe Defendants.  See Napster, 239 F.3d 1004, 1014 (9th Cir. 2001) (characterizing "sampling, where users make temporary copies of a work before purchasing [and] space-shifting, where users access a sound recording . . . that they already own in audio CD format," as fair use affirmative defenses).

The Plaintiffs vociferously reject this kind of ordinary inferential reasoning, contending that public policy demands more from the Plaintiffs in light of their market

power, the failure of the Plaintiffs to spin out the facts particular to each individual defendant, the fact that potential statutory damages far exceed the actual harm caused by the alleged conduct, and the Plaintiffs' demonstrated tactic of using litigation like this solely as a discovery mechanism, without actually intending to pursue their claims to judgment.  The Doe Defendants ask the Court to do in this case what the Supreme Court did in Twombly because, they say, the Plaintiffs will simply use the *in terrorem* effect of statutory damages to force a settlement and, therefore, the complaint should be subjected to more rigorous vetting.  (Mot. to Dismiss at 3-6.)  Simply stated, I am not persuaded that Twombly ushered in a new era for Rule 12(b)(6) contests in which federal courts are expected to adjust the pleading standard depending on an assessment of the social value of a particular litigation.  Even assuming that that is what the Supreme Court did in Twombly, it does not strike me as the sort of exercise a lower court should engage in on a case-by-case basis.  Instead, the Court should simply follow the core holdings of both Twombly and Swierkiewicz and determine whether a plausible claim for relief is set forth in the complaint.  When that standard is applied in this case, it is apparent that the Plaintiffs have set forth sufficient facts to overcome the motion.[5]

---

[5]      I share the Doe Defendants' concern over the absence of individualized allegations, but for a different reason.  My concern has to do with the rules of joinder, see Rule 20(a), and whether it is appropriate for the Plaintiffs to join claims against disparate defendants concerning disparate (albeit similar) conduct, even if only for the purpose of gaining the authority to serve subpoenas to obtain the defendants' names and contact information.  I assume they have done so in order to limit their filing fees and make their discovery work more manageable, but I am not convinced that it is proper.  See, e.g., DirecTV, Inc.  v. Adrian, 2004 U.S. Dist. LEXIS 8922, 2004 WL 1146122 (N.D. Ill. May 17, 2004) (involving claims that defendants separately pirated satellite TV services, without any allegation of concerted action, concluding that joinder was improper, and severing all but the first named defendant from the action).  In particular, paragraph 20 of the complaint alleges that the claims against all defendants arise from the "same series of transactions or occurrences" because the Doe Defendants have the same ISP (the University of Maine) and all engaged in file-sharing over the Internet using that ISP.  The complaint wants, however, any allegation of concerted conduct.  The allegation that all of the claims arise from the same series of transactions or occurrences because all of the defendants used the same ISP sounds good, but makes little sense when one appreciates that having a common ISP says nothing about whether the use of that service by two or more people amounts to the *same* transaction or occurrence.  Rule 11(b)(3) requires

## Conclusion

I **RECOMMEND** that the Court **DENY** the Doe Defendants' motions to dismiss

(doc. nos. 10 & 18).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

---

that a representation in a pleading have evidentiary support and one wonders if the Plaintiffs are intentionally flouting that requirement in order to make their discovery efforts more convenient or to avoid paying the proper filing fees. In my view, the Court would be well within its power to direct the Plaintiffs to show cause why they have not violated Rule 11(b) with their allegations respecting joinder. Separately, the Court may sever defendants *sua sponte*, pursuant to Rule 21, although dismissal of the action is not authorized. I appreciate that increased costs may redound to the defendants' detriment eventually, but it is difficult to ignore the kind of gamesmanship that is going on here with respect to joinder.

Suppose, instead of university students, the record companies chose to target all individuals within the District of Maine who had used these P2P services and had TimeWarner Cable for their ISP. Would all those individuals be properly joined in a single complaint? I think the Plaintiffs know the answer to that question because on May 5, 2007, many of these same plaintiffs filed a very similar lawsuit, Atlantic Recording Corp., *et al.* v. Does 1-22, 1:07-cv-057-JAW. A procedure similar to the one used in this case was adopted in that case, but no motions to dismiss or motions to quash were filed and presumably the plaintiffs obtained the discovery they sought. The case was voluntarily dismissed on July 16, 2007. Following that dismissal the same counsel filed at least three separate cases in this court: Atlantic Recording Corporation, *et al.* v. Anna Lenentine, 1:07-cv-133-JAW, on September 4, 2007 (still pending); Capitol Records Inc. v. Cara Laude, 2:07-cv-154-GZS, on September 4, 2007 (settled and dismissed on January 22, 2008); and Atlantic Recording Corp. v. Christopher Leavitt, 2:07-cv-156-DBH, on September 4, 2007 (voluntarily dismissed with prejudice on October 16, 2007). The relevant allegations in the respective complaints simply state that the defendants were "identified as the individual[s] responsible for that IP address at that date and hour" without reference to how the identification was made. However, there is certainly a "plausible inference" that the identifications were made as a result of the May lawsuit. It is curious that no attempt was made to join these cases as arising from the same transaction or occurrence if my plausible inference is accurate. I think no such attempt was made because it is apparent that the cases would not be properly joined. These plaintiffs have devised a clever scheme to obtain court-authorized discovery prior to the service of complaints, but it troubles me that they do so with impunity and at the expense of the requirements of Rule 11(b)(3) because they have no good faith evidentiary basis to believe the cases should be joined.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 25, 2008