UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ARISTA RECORDS LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CV-07-162-B-W; CV-08-028-B-W |
| | ) | |
| DOES 1-27, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AFFIRMING RECOMMENDED DECISION ON DEFENDANTS' MOTIONS
TO DISMISS AND DISPOSING OF VARIOUS OTHER MATTERS**

A consortium of copyright owners and licensees claim that unknown University of Maine students have infringed their rights in copyrighted songs in violation of federal copyright laws. The Defendants, who remain anonymous, filed dispositive, discovery, and sanctions motions.[1] The Court denies each motion.  The Court concludes that the Plaintiffs' claims survive even assuming the higher standard in *Bell Atlantic Corp. v. Twombly* applies,[2] that the Plaintiffs have not violated the rules on joinder, that the Plaintiffs are entitled to proceed with a discovery deposition of a third party internet service provider, and that the Plaintiffs have not violated Rule 11.

I.      **MOTIONS TO DISMISS**

        A.      **Procedural History**

        The Plaintiffs filed two symmetrical cases against Doe Defendants, alleging copyright infringement.[3]  *Arista Records LLC v. Does 1-27*, No. CV-07-162-B-W (D. Me. filed Oct. 17,

---

[1] The Court held oral argument on all motions on September 12, 2008.
[2] 550 U.S. __, 127 S. Ct. 1955 (2007).
[3] Aside from differences in the parties, the complaints in the cases are identical.  Each contains an attachment setting forth the Internet Protocol (IP) addresses for each Doe Defendant.  Though necessarily different, the attachments are formally identical; neither alleges more legally relevant facts about any Defendant Doe.

2007); *Atlantic Recording Corp. v. Does 1-14*, No. CV-08-028-B-W (D. Me. filed Jan. 30, 2008).  Symmetrical motions to dismiss each case are ready for decision.

Seven Defendants filed the first motion to dismiss on November 14, 2007.  *Defs. Doe 2, 3, 6, 7, 8, 15 & 23 Mot. to Dismiss for Failure to State Claim* (Docket # 10) (*Mot. to Dismiss*); *Mem. in Supp. of the Mot. to Dismiss for Failure to State a Claim of Various Doe Defs.* (Docket # 15) (*Mot. to Dismiss–Mem.*).  Two other defendants later joined that motion.  *Def. Does #16's and #18's Mot. to Dismiss* (Docket # 18); *Mem. in Supp. of the Mot. to Dismiss of Def. Does #16 and #18* (Docket # 19).  Following Plaintiffs' response to both motions, *Pls.' Opp'n to Mot. to Dismiss of Does 2, 3, 6, 7, 8, 15 & 23* (Docket # 27) (*Pls.' Opp'n*), the two groups of Defendant Does replied separately.  *Defs.' Doe 2, 3, 6, 7, 8, 15, 22 & 23 Reply Mem. on Their Mot. to Dismiss for Failure to State a Claim* (Docket # 35) (*Defs.' Doe 2, 3, 6, 7, 8, 15, 22 & 23 Reply*); *Def. Does #16's and #18's Reply Mem. in Supp. of Mot. to Dismiss* (Docket # 36).  The Court referred the motions to dismiss to the United States Magistrate Judge, who filed her Recommended Decision on January 25, 2008.  *Rec. Dec. on Mots. to Dismiss* (Docket # 39) (*Rec. Dec.*).  Defendants filed a joint objection to the Recommended Decision on February 11, 2008, and Plaintiffs filed their response on February 28, 2008.  *Def. Does #16's and #18's Objection to Rec. Dec. on Mot. to Dismiss* (Docket # 43) (*Defs.' Obj.*); *Pls.' Resp. in Opp'n to Def. Does #16 and #18's Objection to Rec. Dec. on Mot. to Dismiss* (Docket # 49) (*Pls.' Resp.*).

One Defendant, Doe 10, filed the second motion to dismiss on May 8, 2008.  *Mot. of Def. Doe 10 to Dismiss for Failure to State a Claim* (Docket # 69).  Plaintiffs filed their opposition on May 29, 2008; Doe 10 has not replied.[4]  *Pls.' Opp'n to Mot. of Def. Doe 10 (08-28) to Dismiss*

---

[4] Doe 10's motion to dismiss, which was originally filed in CV-08-028-B-W and not referred to the magistrate, is substantively identical to the motion to dismiss Does 2, 3, 6, 7, 8, 15, and 23 filed in CV-07-162-B-W, which was referred to the magistrate.  The Court's affirmance of the magistrate judge's Recommended Decision requires denial of Doe 10's un-referred motion for the same reasons.

*for Failure to State a Claim* (Docket # 76).   On May 27, 2008, the Court consolidated the motions to dismiss for briefing and argument.   *Order Granting Mot. to Consol.* (Docket # 67). The Court has reviewed and considered the magistrate judge's Recommended Decision, together with the entire record, and has made a *de novo* determination of all matters adjudicated by the magistrate judge's Recommended Decision.[5]

> **B.     The Court Can Consider the Purpose of the Complaint When Applying the Newly-Refined Pleading Standards of *Twombly***

The Defendants first pin their hopes on *Twombly*.   Acknowledging that under pre-*Twombly* standards, there "would have been no question but that the conclusory complaint filed by plaintiffs here satisfied the 'short and plain statement' requirement of [Rule 8]," they nevertheless contend that *Twombly* mandates a "new and significant construction" of Rule 8, which justifies dismissal.   *Mot. to Dismiss–Mem.* at 3.   Defendants argue that *Twombly* not only directs courts to consider the purpose and context of the litigation when deciding motions to dismiss pursuant to Rule 12(b)(6), but also changes significantly the notice pleading standards of Rule 8(a).   *See* Fed. R. Civ. P. 8(a) & 12(b)(6); *Defs.' Obj.* at 2-3.   In her Recommended Decision, the magistrate judge wrote that she was "not persuaded that *Twombly* ushered in a new era for Rule 12(b)(6) contests in which federal courts are expected to adjust the pleading standard depending on an assessment of the social value of a particular litigation."   *Rec. Dec.* at 11.   The Court agrees.

---

[5] Plaintiffs characterize Defendants' Motions to Dismiss as "nondispositive" and advocate a "'clearly erroneous or contrary to law'" standard of review by the Court.   *Pls.' Resp.* at 3 (quoting Fed. R. Civ. P. 72(a)).   Plaintiffs misread 28 U.S.C. § 636(b)(1), which excepts a motion to dismiss from the clearly erroneous or contrary to law standard, and expressly provides for *de novo* review of objections to recommended decisions on motions so excepted.   28 U.S.C. § 636(b)(1)(A)-(C).

### 1.    *Twombly*

In *Twombly*, the Court considered whether a class action alleging violations of the Sherman Act, 15 U.S.C. § 1 *et seq.*, could survive a Rule 12(b)(6) motion to dismiss.  The complaint alleged "certain parallel conduct unfavorable to competition," but did not allege "factual context suggesting agreement, as distinct from identical, independent action."  127 S. Ct. at 1961.  *Twombly* observed that under the substantive law, "'[t]he crucial question' is whether the challenged anticompetitive conduct 'stem[s] from independent decision or from an agreement, tacit or express.'"  *Id.* at 1964 (alterations in original) (quoting *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954)).  The Court further noted that because the Sherman Act prohibits "'only restraints [of trade] effected by a contract, combination, or conspiracy,'" *id* (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 775 (1984)), and because parallel behavior is consistent with both independent action and conspiracy, it is essential for a Sherman Act plaintiff to "include evidence [at trial] tending to exclude the possibility of independent action."  *Id.* (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984)).

After outlining the substantive law, the Court reviewed the familiar pleading standard under Rule 8(a) and the standard of review under Rule 12(b)(6):

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Id.* at 1964-65 (alterations in original) (citations and internal quotations omitted).  Applying these standards to a claim under the Sherman Act, the Court held "that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made."

*Id.* at 1965.  The Court was careful to state that to require "plausible grounds to infer an agreement" in a Sherman Act complaint was not to "impose a probability requirement at the pleading stage."  *Id.*  Nevertheless, referring to the traditional standard of "no set of facts," *Twombly* concluded that "after puzzling the profession for 50 years, this famous observation has earned its retirement."  *Id.* at 1969.

### 2.    *Twombly* and the Context of the Litigation

The Defendants claim that the Plaintiffs filed the present action "solely to create a vehicle to obtain the Defendants' federally-protected educational records, then to use that information to demand settlement amounts far in excess of the Plaintiff's [sic] actual damages from the individual student-defendants."  *Defs.' Obj.* at 3 (citations omitted).  In support, Defendants ascribe a national litigation strategy to the Plaintiffs, including the filing of single complaints against multiple anonymous persons, obtaining through expedited discovery indentifying information for each, and dismissing the dragnet complaints only to re-file against the unmasked individuals severally to extract speedy settlements.  *Id.* at 5-6 (listing sixteen dismissed cases, including three in this District).  Defendants request that the Court judicially notice these proceedings and infer from them that Plaintiffs' prayers for injunctive relief, statutory damages, costs, and attorney fees, are mere pretexts to obscure Plaintiffs' improper purpose of identifying anonymous, alleged infringers.

The first question is whether the Court may review filings in other cases in ruling on a motion to dismiss.  First Circuit precedent permits consideration of documents "the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *see Warren Freedenfeld Assocs. v. McTigue*, 531 F.3d 38, 44 (1st

Cir. 2008) (matters susceptible to judicial notice may be considered when ruling on a motion to dismiss); *Ezra Charitable Trust v. TYCO Int'l, Ltd.*, 466 F.3d 1, 9 n.7 (1st Cir. 2006) (taking judicial notice of Securities and Exchange Commission complaint filed in the United States District Court for the Southern District of New York); Fed. R. Evid. 201(b)(2).   Under a *Watterson* exception, the Court concludes that for purposes of ruling on the motions to dismiss, it may review decisions from proceedings in this District and elsewhere.

The Defendants, however, gain no ground.  Seizing on dicta, Defendants claim *Twombly* invites a cost/benefit analysis at this stage of a litigation:  the higher the cost of proceeding to judgment, the more beneficial to hold the pleadings to a higher standard under Rules 8(a) and 12(b)(6).  *See Defs.' Obj.* at 3-4.  There is some language in *Twombly* that supports this view. Responding to the dissent's contention that discovery would be phased and limited, *Twombly* noted that "determining whether some illegal agreement may have taken place between unspecified persons at different [Incumbent Local Exchange Carriers] (each a multibillion dollar corporation with legions of management level employees) at some point over seven years is a sprawling, costly, and hugely time-consuming undertaking not easily susceptible to the kind of line drawing and case management that the dissent envisions."  *Twombly*, 127 S. Ct. at 1967 n.6. *Twombly* also observed that care at summary judgment and well-crafted jury instructions will do nothing to cure the problem of discovery abuse, given that "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings." *Id.* at 1967.  The heightened *Twombly* standard thus responded to factors which, though not unique to antitrust litigation, apply with special force to large-scale litigation based on an

inherently ambiguous cause of action.[6]  What remains unclear is how the court should take

*Twombly* concerns into account in simpler litigation.[7]

Soon after *Twombly*, the Supreme Court addressed a motion to dismiss in *Erickson v.*

*Pardus*, 551 U.S. __, 127 S. Ct. 2197 (2007).  In *Erickson*, the Court vacated a decision

dismissing a pleading in a prison suit under 42 U.S.C. § 1983, concluding that the allegations in

the petition met the "short and plain statement" requirement of Rule 8(a)(2).  127 S. Ct. at 2200.

In doing so, the Court did not mention the *Twombly* "plausible grounds" standard.  *Erickson*

reiterated the precept that "[s]pecific facts are not necessary; the statement need only 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Id.* (quoting

*Twombly*, 127 S. Ct. at 1964).  *Erickson* did not touch on the *Twombly* concerns of ill-defined

causes of action, expensive discovery, and *in terrorem* litigation.

The First Circuit has answered the threshold question of whether *Twombly* announces a

new standard.  It does.  Since *Twombly*, the First Circuit has reiterated that the standard for

assessing a motion to dismiss is whether "the complaint states facts sufficient to establish a

'claim to relief that is plausible on its face.'"  *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*,

---

[6] *Twombly* used "plausible*"* in the context of a Sherman Act claim, which presents the particular difficulty of distinguishing independent from conspiratorial action: parallel conduct can be satisfactorily explained by both, yet only the latter is an element of a Sherman Act claim.  In other words, although courts should continue to "draw all reasonable inferences [from all well-pleaded facts] in favor of the nonmovant," *Warren Freedenfeld*, 531 F.3d at 43, if one set of facts gives rise to two equally reasonable inferences, there is no good reason to infer one as opposed to the other.  Under these circumstances, a plaintiff cannot be saved by the inferential slant in her favor.  For such advantage to come into play, the inference must first be a reasonable one.  According to *Twombly*, a Sherman Act complaint must therefore allege facts that plausibly tip the scale towards conspiracy, which cannot reasonably be inferred from allegations of parallel conduct alone.  *Twombly*, 127 S. Ct. at 1964-66.  *Twombly*'s unique context seems to have influenced the decision; whether courts should engage in a similar analysis in less complicated causes of action remains unresolved.

[7] Interpreting and applying *Twombly*, courts have puzzled over the difficulties associated with disentangling the holding and the dicta.  *See, e.g.*, *United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 502 n.6 (6th Cir. 2008); *Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008) (concluding that *Twombly* "leaves the long-standing fundamentals of notice pleading intact"); *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803-04 (7th Cir. 2008) (cautioning that *Twombly* "must not be overread"); *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (describing the new formulation as "less than pellucid"); *Phillips v. County of Allegheny*, 515 F.3d 224, 233-35 (3d Cir. 2008) (describing *Twombly* as "confusing"); *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 n.7 (4th Cir. 2007); *Iqbal v. Hasty*, 490 F.3d 143, 155-58 (2d Cir. 2007) (referring to "conflicting signals" in *Twombly*).

524 F.3d 315, 320 (1st Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1974); *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95-96 (1st Cir. 2007). In *ACA Fin. Guar. Corp. v. Advest, Inc.*, the First Circuit summed up *Twombly* by saying that it gave Rule 12(b)(6) "more heft." 512 F.3d 46, 58 (1st Cir. 2008).

But, addressing appellate challenges under the *Twombly* standard, the First Circuit has not engaged in an analysis of *Twombly* concerns. *But see Am. Steel Erectors, Inc. v. Local Union No. 7, Int'l Assoc. of Bridge, Structural, Ornamental and Reinforcing Iron Workers*, 536 F.3d 68, 77 n.7 (1st. Cir. 2008) (noting that *Twombly* "rais[ed] the pleading requirements for an antitrust claim, in light of the 'unusually high cost of discovery in antitrust cases'" (quoting *Twombly*, 127 S. Ct. at 1967)). Instead, the First Circuit has simply applied the higher plausibility standard while measuring the facts alleged in the complaint against the elements of the cause of action in a manner consistent with pre-*Twombly* case law. *Thomas v. Rhode Island*, No. 07-1985, 2008 U.S. App. LEXIS 20482, at *9-10 (1st Cir. Sept. 24, 2008); *Warren Freedenfeld*, 531 F.3d at 44-45; *Morales-Tanon v. Puerto Rico Elec. Power Auth.*, 524 F.3d 15, 18-19 (1st Cir. 2008); *Trans-Spec Truck Serv.*, 524 F.3d at 319-20. These post-*Twombly* decisions in the First Circuit suggest that other than adopting the plausibility standard, *Twombly* is not to be construed to create a sliding scale of heightened review, depending on the complexity and potential expense of the underlying litigation.[8] If this analysis is correct, the Defendants' contentions about how the

---

[8] Extrapolating from a recent case in which the Third Circuit stated that "[c]ontext matters in notice pleading," *Phillips*, 515 F.3d at 233; *see Robbins*, 519 F.3d at 1248 (agreeing with *Phillips* that "context matters"), Defendants contend that the Plaintiffs' "nationwide, systematic and coordinated campaign," alleged strong-arm settlement tactics, and the possible asymmetry between actual and statutory damages provide the relevant context here. *See Defs.' Obj.* at 3-5. Even under *Phillips*, the only material context under Rule 8(a) is "the type of case" being litigated. *Phillips*, 515 F.3d at 233. In other words, the elements of the claim and the historical facts alleged in the complaint provide the relevant Rule 12(b)(6) context. Extraneous suggestions of the Plaintiffs' conduct in other similar cases, including possible, even probable, voluntary dismissal by Plaintiffs following limited discovery, are irrelevant. *Twombly* cannot fairly be read to instruct otherwise.

recording industry Plaintiffs have addressed similar lawsuits are not properly considerations for a Rule 12(b)(6) dismissal.

Assuming, for the sake of argument, that *Twombly* requires an assessment of context in addition to an analysis of pleadings, the Defendants here can hardly be said to be in the same position as the defendants there.  The only discovery Plaintiffs have sought is from Defendants' Internet Service Provider (ISP), third party University of Maine.[9]  Ex Parte *Mot. for Leave to Take Immediate Disc.* at 2 (Docket # 4) (*Disc. Mot.*).  Perhaps recognizing that *Twombly*'s discovery-related concerns do not apply to them, Defendants instead base their argument for a higher pleading standard on the type of information likely to be discovered and the extent of their possible liability for statutory damages.  *See Mot. to Dismiss–Mem.* at 1; *Defs.' Obj.* at 1.  In the context of this case, the Family Educational and Privacy Rights Act (FERPA), 20 U.S.C. § 1232g, affords comparatively weak protections, which do not transform Plaintiffs' Complaint into one that improperly seeks nothing more than confidential information.[10]  Furthermore, the Court does not share Defendants' view that their potential liability for statutory damages in excess of Plaintiffs' actual damages somehow requires that they remain anonymous.  *See Defs.' Obj.* at 3-4.  Although the Court has not found in any party's motion papers reference to the Online Copyright Infringement Liability Limitation provisions of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512, that statute specifically provides for copyright owners' discovery of the very information Plaintiffs seek here.[11]  *See* 17 U.S.C. § 512(h) ("A copyright

---

[9] At least, this is the only discovery the parties have made the Court aware of.

[10] The Court discusses this issue in greater detail below.  *See infra* Parts II.B, III.

[11] Two circuit courts quashed subpoenas issued under the DMCA that sought identifying information of alleged infringers from ISPs.  *See Recording Indus. Ass'n of Am. v. Charter Commc'ns, Inc.* (*In re Charter Commc'ns, Inc., Subpoena Enforcement Matter*), 393 F.3d 771, 772 (8th Cir. 2005); *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1233 (D.C. Cir. 2003), *cert. denied*, 543 U.S. 924 (2004).  Those decisions were based on a reading of the DMCA that allowed for issuance of a subpoena only if the service provider in fact performed a storage function for the infringer.  Because the service providers in the cases performed transmission functions only, the subpoena provisions of the DMCA could not be applied to them.  *See, e.g., Charter Commc'ns,*

owner . . . may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer . . . .").  Accordingly, the DMCA specifically sanctions the disclosure of anonymous internet users' identities.  Even if the Court agreed that *Twombly* granted the discretion to hold a complaint to a higher standard where discovery could be expensive, or result in lost anonymity and liability for statutory damages, the Court is not persuaded that present circumstances warrant exercise of such discretion.[12]

### 3.        Applying the Newly-Refined Pleading Standards of *Twombly*

After *Twombly*, the task under Rule 12(b)(6) remains essentially the same with a slightly enhanced degree of scrutiny.  First, a court "continues to take all factual allegations as true and to draw all *reasonable* inferences in favor of the plaintiff."  *Rodriguez-Ortiz*, 490 F.3d at 96 (emphasis in original).  Second, a court "need not credit a complaint's bald assertions or legal conclusions."  *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996) (citation and internal quotation omitted).  Third, a court must determine whether the complaint's factual allegations "'possess enough heft' to set forth 'a plausible entitlement to relief.'"  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1966-67).  Finally, a court should dismiss the complaint for failure to state a claim if it fails to set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'"  *Id.* (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

---

*Inc.*, 393 F.3d at 777.  The *Charter* majority's reading of the DMCA, accompanied by a well-reasoned dissent, *id.* at 778 (Murphy, J., dissenting), does not apply to this case: Defendants' argument for dismissal is based on the nature of the identifying information, and not on the storage versus transmission functions their common ISP performs. Moreover, Plaintiffs have not engaged the DMCA machinery in this case; perhaps because *Charter* says they cannot.  The Court refers to the DMCA to illustrate why it does not look askance at Plaintiff's strategy, as Defendants have asked.

[12] The Defendants contradict themselves.  They first claim that the Plaintiffs use this type of lawsuit for discovery and settlement purposes only, pressuring the revealed defendants to quick settlement in the face of exorbitant statutory damages.  In the next breath, they liken these law suits to expensive and complex antitrust litigation.

10

Defendants object to the Recommended Decision on the grounds that it does not, under the proper standard, satisfactorily analyze the fit between the Complaint's factual allegations and the elements of copyright infringement.  *Defs.' Obj.* at 8.  Defendants protest that Plaintiffs' Complaint contains only "bald assertions" and "problematic suppositions" that fall short of alleging "'a plausible entitlement to relief.'"  *Id.* (quoting *Twombly*, 127 S. Ct. at 1967).

Before the Court can address the substance of Defendants' objection, the Court must make a second *Watterson* determination.  As the magistrate judge noted, Plaintiffs filed a number of documents on the same day as the Complaint, but only two of them qualify for consideration under *Watterson.  Watterson*, 987 F.2d at 3 (stating that a court may consider only "documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiffs' claim; or . . . documents sufficiently referred to in the complaint").  Attached to the Complaint is a two-page document entitled "Exhibit A Doe List" that does nothing more than identify each Doe with an IP address.  *Compl.* ¶ 19; *Compl.* at Ex. A (Docket # 1-2).  Because this document is attached to the Complaint as "Exhibit A," the Court may consider it.  In addition, there is another document entitled "Exhibit A" that is also referred to in the Complaint.  *See Compl.* ¶¶ 22, 24-25.  Attached not to the Complaint, but to a contemporaneously filed Report on the Filing or Determination of an Action or Appeal Regarding a Copyright (Docket # 5) (*Copyright Litigation Rpt.*), this Exhibit A "identifies on a Defendant-by-Defendant basis . . . the IP address with the date and time of capture and a list of copyrighted recordings that each Defendant has, without the permission or consent of Plaintiffs, downloaded and/or distributed to the public."  *Compl.* ¶ 24; *see Copyright Litigation Rpt.* at Ex. A (Docket # 5-2).  Despite the haphazard manner in which Plaintiffs filed and referred to these documents, because Exhibit A to the Copyright Litigation Report was prepared by Plaintiffs and

is "sufficiently referred to in the complaint," *Watterson*, 987 F.2d at 3, the Court may consider it. *See id.* at 4 ("'The problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff . . . Where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.'" (alteration in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991))).

The Complaint, considered with the two Exhibits A, survives Defendants' motion to dismiss. Plaintiffs' Complaint alleges facts that set forth "'a plausible entitlement to relief,'" *Rodriguez-Ortiz*, 490 F.3d at 95 (1st Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1967), under the Copyright Act, 17 U.S.C. § 101 *et seq.* There are only two elements to a claim of copyright infringement: (1) copyright ownership and (2) violation of "any of the exclusive rights of the copyright owner," which include reproduction and distribution rights. 17 U.S.C. §§ 106, 501. Plaintiffs have alleged ownership, *Compl.* ¶ 22, and pleaded facts in support of those allegations. *Copyright Litigation Rpt.* at Ex. A (providing the registration number for each copyrighted recording). Plaintiffs have also alleged that "each Defendant, without the permission or consent of Plaintiffs, has continuously used, and continues to use, an online media distribution system to download and/or distribute to the public" the same copyrighted recordings. *Compl.* ¶ 24.

Here, the Complaint does not merely allege distribution and reproduction; it contains factual allegations specific to each Defendant. Each Defendant is identified by his or her IP address. *Compl.* at Ex. A. Associated with each IP address is a detailed list of songs that were allegedly distributed to or downloaded from others on the file sharing network. *Compl.* ¶ 24; *Copyright Litigation Rpt.* at Ex. A. The Complaint, as drafted, gives the Defendants "fair notice

of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1964 (alteration in original) (internal quotation omitted).

Furthermore, each IP address is alleged to have actively participated in either "Gnutella" or "AresWarez," networks that allow users to share electronic files anonymously over the internet. *Copyright Litigation Rpt.* at Ex. A. "Gnutella technology," no stranger to copyright litigation, was used in certain "Morpheus" software that, as the Supreme Court recently observed, allows users to "download desired files directly from peers' computers." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 922 (2005). In *Grokster*, the Court held StreamCast, the distributor of the Morpheus software, liable for the copyright infringing acts of its users. *Id.* at 919. Although it is true that StreamCast and Grokster conceded their users' copyright infringement in that case, *id.* at 923, *Grokster* demonstrates that it is plausible under *Twombly* to infer that Defendants in fact both downloaded copyrighted songs and shared them with other users. After all, the *Grokster* Court distinguished "item[s] with substantial lawful as well as unlawful uses" from those "good for nothing else but infringement," and found that Morpheus and the Gnutella technology belong in the latter category. *Grokster*, 545 U.S. at 932 (internal quotation omitted). Because it is reasonable to infer that the Defendants downloaded and shared files, the Court draws those inferences in Plaintiffs' favor, as it should. *Rodriguez-Ortiz*, 490 F.3d at 96. Unlike the allegations of parallel conduct in *Twombly*, which were consistent with both independent action and conspiracy, allegations of file sharing and membership in a peer-to-peer network are most consistent with downloading and distribution in violation of Plaintiffs' exclusive rights.

Defendants nonetheless argue that although ownership of copyrighted music files and membership in a file sharing network may allow for an inference that they made copyrighted

songs available to others, a claim for infringement requires more.  In their original motion to dismiss, Defendants make passing reference to one authority on this critical question. Defendants claim "[i]t is highly unlikely that merely offering to sell or give away a copy (as opposed to selling it or giving it away) is an infringing act."  *Mot. to Dismiss–Mem.* at 6 n.15 (citing *Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 46 (1st Cir. 2007), *cert. denied*, 128 S. Ct. 1232 (2008)).  Their Reply brief goes no further.  *Defs.' Doe 2, 3, 6, 7, 8, 15, 22 & 23 Reply* at 4.

Plaintiffs' response, namely that users of peer-to-peer networks who "distribute (upload) and copy (download) copyrighted material violate the copyright laws," assumes that what Defendants were able and likely to have done here amounts to distribution under the Copyright Act.  *Pls.' Opp'n* at 2 (citing *A & M Records, Inc. v. Napster*, 239 F.3d 1004, 1014 (9th Cir. 2001)).  It is regrettable that the parties did not more fully develop this point, because there is considerable authority for the proposition that storage of copyrighted recordings and making them available on a network does not amount to copyright infringement.  *See, e.g.*, *Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 981-82, 987 (D. Ariz. 2008) (denying summary judgment to recording company and holding that "[m]erely making a copy available does not constitute distribution"); *Elektra Entm't Group, Inc. v. Barker*, 551 F. Supp. 2d 234, 246 (S.D.N.Y. 2008) (denying motion to dismiss complaint that included a "making available" claim only because plaintiff also pleaded disjunctive theories of liability based on actual transfers of copyrighted works).

There is also authority for the proposition that infringement of exclusive distribution rights under 17 U.S.C. § 106(3) includes "making available" liability based on the fact that an infringer has taken all but the ultimate step of actual "distribution."  *See, e.g.*, *Hotaling v. Church*

14

*of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997) (finding libraries infringed exclusive distribution rights by maintaining unauthorized copies of microfiche in collection, listing them in their catalogs, and making them available to the borrowing or browsing public); *Universal City Studios Prods. LLLP v. Bigwood*, 441 F. Supp. 2d 185, 190-91 (D. Me. 2006) (citing *Hotaling* and holding that file-sharing network participant who admitted making movie files available to others was liable for infringement of copyright owner's distribution right).  Other courts have taken advantage of a case's procedural posture and elected, in effect, not to take a side in the debate.  *See, e.g.*, *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 169 (D. Mass. 2008) (denying motion to dismiss complaint similar to Plaintiffs' on the basis "that where the defendant has completed all the necessary steps for a public distribution, a reasonable fact-finder may infer that the distribution actually took place").

The most recent First Circuit opinion on the issue provides guidance.  In *Latin Am. Music*, the First Circuit was asked to reverse summary judgment in favor of several music publishers who alleged copyright infringement by Latin American Music Company (LAMCO). 499 F.3d 32, 46 (1st Cir. 2007).  The lower court had found that LAMCO infringed the publishers' copyrights by (1) including some of the publishers' songs in its music catalog, (2) making other songs available to be heard through its website, and (3) distributing a compact disc that included some of the publishers' songs.  *Id.*  The First Circuit vacated in part the lower court and stated, with respect to LAMCO's music catalog, that the publishers had not cited any "authority to show that including songs in a catalog" is an infringing action.  *Id.*  Importantly, the court went on to note that making songs available on a website and distributing a compact disc with copyrighted songs "might be infringing actions."  *Id.* at 47.  Because LAMCO acted this way with respect to only nine songs and summary judgment of infringement had been granted

15

with respect to 468 songs, the court vacated the lower court's order.  *Id.* at 47.  *Latin Am. Music*
does not necessarily mean that a complaint alleging something similar to making songs available
on a website for listening should be dismissed for failure to state a claim.  The First Circuit stated
that posting songs on a website "might be infringing."  Whether it is likely infringing or "highly
unlikely," as Defendants claim, *Mot. to Dismiss–Mem.* at 6 n.15, the Court need not resolve at
this early stage.[13]

*Twombly* did not "impose a probability requirement at the pleading stage."  127 S. Ct. at
1965.  All that is required are "enough fact[s] to raise a reasonable expectation that discovery
will reveal evidence," *id.*, of either distribution or downloading.  By alleging facts regarding (1)
Plaintiffs' ownership of copyrighted songs, (2) Defendants' membership in a file-sharing
network, and (3) Defendants' holding out those songs in such a way that final distribution for
downloading depends only on the proper functioning of file-sharing software installed on
Defendants' computers, Plaintiffs' Complaint survives Defendants' motions to dismiss.

###### C.    The Plaintiffs Violated the Rules of Joinder

In her Recommended Decision, the magistrate judge suggested that the Court enter an
order to show cause why Plaintiffs should not be sanctioned pursuant to Rule 11.  *Rec. Dec.* at
11-12 n.5.  The magistrate judge recommended that the order direct the Plaintiffs to demonstrate
that they have adequate evidentiary support for their factual contentions regarding joinder of
Plaintiffs and Defendants in this action.  *Id.*; *see* Fed. R. Civ. P. 11(b)(3).  The Court did not act
on the recommendation, and did not issue the show cause order.  Presumably encouraged by the

---

[13] What the First Circuit made clear in *Latin Am. Music* is that "[m]ere authorization of an infringing act is an
insufficient basis for copyright infringement. . . . [T]o prove infringement, a claimant must show 'an infringing act
after the authorization.'"  *Latin Am. Music*, 499 F.3d at 46 (quoting *Venegas-Hernandez v. Asociacion De
Compositores y Editores De Musica LatinoAmericana*, 424 F.3d 50, 52 (1st Cir. 2005)).  Although this is likely a
true statement of Plaintiffs' burden on the merits of their claims, the Plaintiffs need not "prove" anything at this
stage.

magistrate judge's recommendation, the Defendants moved for sanctions pursuant to Rule 11 based in large part on the joinder issue. *Def. Does #16 and #18's Mot. for Sanctions Pursuant to Rule 11* (Docket # 56) (*Sanctions Mot.*)   The merits of Defendants' sanctions motion are discussed *infra* Part III.

> Rule 20(a)(2) permits joinder of a number of defendants in one cause of action if
>
> (A)  any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B)  any question of law or fact common to all defendants will arise in the action.[14]

Fed. R. Civ. P. 20(a)(2).  Rule 20 is permissive.  *Compare* Fed. R. Civ. P. 20(a)(2) (stating that "[p]ersons . . . *may* be joined in one action as defendants") (emphasis added), *with* Fed. R. Civ. P. 19 (addressing required joinder of parties).  The purpose of the rule is "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits."  7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1652, at 395 (3d ed. 2001) (Wright, Miller & Kane).  The Court's discretion, however, is not unlimited.  To be joined, the right to relief must relate to or arise out of the same transaction or occurrence.  *Id.* § 1653.  The Plaintiffs point out that the Complaint alleges the Doe Defendants (1) engaged in copyright infringement on the internet; (2) uploaded and downloaded copyrighted sound recordings using peer-to-peer networks; and (3) accessed the peer-to-peer network though a common ISP—the same University.  *Pls.' Resp.* at 10-11.  The Plaintiffs further assert that twenty-five of the twenty-seven Doe Defendants used the same peer-to-peer network and many infringed the same copyrighted sound recording or different copyrighted sound recordings from the same artist.  *Id.* at 11.  Finally, they allege that the Doe

---

[14] It would be difficult to conclude, based on the multiplicity of motions addressed in this Order alone, most of which were generated by the Doe Defendants, that the Plaintiffs do not meet the common questions of law or fact criterion.

17

Defendants have been "active participants in what can only be described as an on-line music swap meet, unlawfully copying copyrighted works from other users and distributing such works to other users." *Id.*

Based on these allegations, the Court is not as troubled as the magistrate judge by joinder of these Doe Defendants in one lawsuit. In fact, the Plaintiffs attached a list of over three hundred court orders which they claim have approved joinder in similar cases. *See id.* Ex. 1 (Docket # 49-2). At the very least, it seems premature to make a final determination that joinder is not permissible under Rule 20. Finally, as Rule 21 makes clear, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Absent dismissal, the Court could *sua sponte* "on just terms, add or drop a party." *Id.* The remedy, then, would be to break up this one lawsuit into individual causes of action, an alternative that does not exactly resonate with practicality.

Regarding the magistrate judge's concern about the possibility of abuse of the litigation process by the Plaintiffs, the Court is again more sanguine. It is true, as the magistrate judge observes, that the Plaintiffs have not identified and served the Doe Defendants and that they seek their names through this lawsuit. It is also possible that once identified and served, the Doe Defendants will determine that it is in their best interests to resolve the case. But, the Court begins with the premise that the Plaintiffs have a statutorily protected interest in their copyrighted material and that the Doe Defendants, at least by allegation, have deliberately infringed that interest without consent or payment. Under the law, the Plaintiffs are entitled to protect their copyrighted material and it is difficult to discern how else in this unique circumstance the Plaintiffs could act. Not to act would be to allow those who would take what is

not theirs to remain hidden behind their ISPs and to diminish and even destroy the intrinsic value of the Plaintiffs' legal interests.

## II.  MOTIONS TO VACATE *EX PARTE* DISCOVERY ORDER, TO QUASH THE SUBPOENA AND TO TAKE DISCOVERY, AND TO STRIKE THE LINARES DECLARATION

On October 17, 2007, the Plaintiffs moved *ex parte* for an order, permitting them to take immediate discovery to determine the true identities of the Doe Defendants. Ex Parte *Mot. for Leave to Take Immediate Disc.* (Docket # 4) (*Disc. Mot.*).  In support of their motion, the Plaintiffs attached a declaration from Carlos Linares, Vice President Anti-Piracy Legal Affairs for the Recording Industry of America, Inc.  *Decl. of Carlos Linares in Support of Disc. Mot.* (Docket # 4-3) (*Linares Decl.*).  The magistrate judge granted the motion on October 24, 2007, and authorized the Plaintiffs to take "immediate discovery on the University of Maine System to obtain the identity of each Doe defendant."  *Order Re:  Expedited Disc.* (Docket # 6).  The University of Maine moved to stay the subpoena "until the court has resolved the motions to dismiss."  *Mot. to Stay Subpoena by University of Maine System* at 1 (Docket # 23).  On December 7, 2007, the Court granted the motion to stay without objection.  *Order* (Docket # 31). With the decision on the motion to dismiss and the possibility of the dissolution of the stay looming, on May 8, 2008, the Defendants moved separately to vacate the magistrate judge's October 24, 2007 discovery order, quash the University of Maine subpoena, and strike the Linares Declaration. *Mot. of Does 2, 3, 6, 8, 15 & 23 to Vacate* Ex Parte *Disc. Order, to Quash the Subpoena and to Take Disc.* (Docket # 63) (*Mot. to Vacate, Quash, and Disc.*); *Mot. of Does 2, 3, 6, 8, 15 & 23 to Strike the Decl. of Carlos Linares* (Docket # 62) (*Mot. to Strike*); *Mot. of Doe 10 to Vacate Ex Parte Disc. Order, to Quash the Subpoena and to Take Disc.* (Docket # 71)

(originally filed in CV-08-28-B-W); *Mot. of Doe 10 to Strike the Decl. of Carlos Linares* (Docket # 70) (originally filed in CV-08-28-B-W).[15]

The motion to vacate features two central claims.  First, Defendants argue that because the Linares Declaration is based on information gathered by allegedly unlicensed private investigators, the Court should not have relied on it when it issued the expedited discovery order. Second, Defendants argue that Plaintiffs were not equitably entitled to expedited discovery on an *ex parte* basis because they failed to demonstrate that they would suffer irreparable harm without the discovery and that they would likely succeed on the merits of their claim.  *Mot. to Vacate, Quash, and Disc.* at 5.   The motion to strike the Linares Declaration is grounded on the assumption that the Federal Rules of Evidence apply to the Declaration and it should therefore be struck, because (1) "it is laden with inadmissible hearsay," (2) "there is no foundation for most of the factual assertions in the declaration," and (3) "the declaration offers expert testimony" absent qualification of the declarant as an expert.  *Mot. to Strike* at 1.

Time, however, has eclipsed many of the Defendants' concerns.  The *ex parte* motion sought to take the University's immediate deposition before the Rule 26(f) scheduling conference, and the essence of the Defendants' objections relate to the timing of the discovery and its *ex parte* nature.  By now, however, the *ex parte* motion for immediate discovery is no longer *ex parte* and no longer immediate.[16]  Pruned of its trimmings, the Plaintiffs' motion has become a garden variety discovery motion.  Commonly, the procedure would be for the Plaintiffs to issue a subpoena under Rule 45, requiring the University to appear at a deposition and produce

---

[15] Like Doe 10's motion to dismiss, these motions, which were originally filed in CV-08-028-B-W, are identical to and were consolidated for argument with the motions of Does 2, 3, 6, 8, 15, and 23.  *See Order Granting Mot. to Consol.*; *see also supra* note 4.

[16] The Court acknowledges that this is an odd, even unique situation, since the Doe Defendants have not yet been identified or served.  Yet, they are represented by counsel.  The deposition would still take place before the Scheduling Order, but as the Complaint has been pending since October 17, 2007, the objection to pre-Scheduling Order discovery is only technical.

documents.  Fed. R. Civ. P. 45.  If the University or a party with standing objected to the deposition, either could move to quash the subpoena or obtain a protection order.[17]  Fed. R. Civ. P. 45(c).  Assuming the subpoena is not one that must be quashed, *see* Fed. R. Civ. P. 45(c)(3)(A), the "decision whether to quash, modify, or condition a subpoena is within the district court's discretion."  Wright & Miller § 2463.1, at 485-86.  The Defendants bear a burden to demonstrate that the magistrate judge's Order authorizing the deposition amounted to an improper exercise of judicial discretion.

### A.      The Linares Declaration

The Defendants seek to undercut the magistrate judge's Order by attacking the facts upon which she presumably relied in granting the Plaintiffs' motion for leave to take the University's deposition.  First, they claim that the Linares Declaration contains inadmissible evidence and thus should not be considered; and, second, they assert that the Linares Declaration relied on information illegally obtained by unlicensed private investigators and thus should have been ignored by the Court.

### 1.      Whether the Federal Rules of Evidence Are Applicable to a Discovery Motion

In response to the Court's invitation, the Defendants filed a brief memorandum to show why the Court was wrong to consider the Linares Declaration when it entered the *ex parte*

---

[17] Though the University successfully moved to stay the deposition, it has not moved to quash or modify the subpoena.  Instead, it is the Defendants who have moved to quash a subpoena for a third party to attend a deposition.  "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought."  9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459, at 435 (3d ed. 2008) (Wright & Miller).  Under FERPA, if an educational institution is supplying identifying information in education records pursuant to a lawfully issued subpoena, the law mandates prior notice to the students, if they are 18 or older.  20 U.S.C. § 1232g(b)(2)(B), (d) (providing that where the students are either at least eighteen years old, or are attending an institution of postsecondary education, "the rights accorded to the parents of the student shall thereafter only be . . . accorded to the student").  The evident purpose of prior notice requirement is to allow the student to object and therefore, the Court concludes that FERPA gives the Doe Defendants standing to challenge the subpoena and the Linares Declaration, even here in this unusual circumstance, where the Doe Defendants have not yet been served.

discovery order.  *See Defs.' Post Hr'g Mem. on Evid.* at 1-2 (Docket # 98) (*Defs.' Surreply*).
The Defendants argue that the motion relied on facts outside the record, and that in such
circumstances Rule 43(c) provides that "the court may hear the matter on affidavits or may hear
it wholly or partly on oral testimony or on depositions."  Fed. R. Civ. P. 43(c).  Arguing that the
Linares Declaration is none of the above, Defendants assert that the Court lacks the discretion to
consider it.  The Defendants also draw support from Federal Rule of Civil Procedure 7 and Rule
7 of the Local Rules of this District.  *See Defs.' Surreply* at 1 (citing Rule 7 and Local Rule 7(a)
for the respective propositions that (1) a motion must state with particularity the grounds for
seeking an order, and (2) affidavits or other documents should accompany and provide
evidentiary support for a motion).

To address the last point first, the Defendants seek too much from these rules.  Federal
Rule 7(b)(1)(B) only states that a motion must "state with particularity the grounds for seeking
the order"; it does not address when an affidavit must accompany the motion or the evidentiary
quality necessary for the affidavit.  Local Rule 7(a) provides:

> Every motion shall incorporate a memorandum of law, including citations and supporting
> authorities.  Affidavits and other documents setting forth or evidencing facts on which the
> motion is based shall be filed with the motion.

D. Me. Loc. R. 7(a).  Local Rule 7(a) does not address the extent to which the Federal Rules of
Evidence are to be applied to the affidavits submitted with the motions.

The Defendants are simply wrong in arguing that the Linares Declaration is deficient
because it is not an affidavit.  "[A]n unsworn statement under penalty of perjury has the same
effect as an affidavit."  *In re Martinez-Catala*, 129 F.3d 213, 218 (1st Cir. 1997) (citing 28
U.S.C. § 1746).  Section 1746 provides, in relevant part:

> Wherever, under any law of the United States or under any rule, regulation, order,
> or requirement made pursuant to law, any matter is required or permitted to be

supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

. . .

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)".

28 U.S.C. § 1746. Comparing the statute with the relevant portions of the unsworn Linares Declaration, the Court finds it conforms to the statutory requirements.[18]

Both a motion for leave to take a deposition and a motion to quash would typically be treated as addressing a discovery dispute subject to Local Rule 7(b). Commonly, the parties' memoranda supply the factual background for the dispute and the Court accepts the descriptions for purposes of its ruling; the Local Rule does not contemplate a full-blown evidentiary hearing, though in an unusual case the trial judge could order one.[19] Here, in effect, the Plaintiffs anticipated that the deposition of the University would provoke controversy, and the Linares Declaration provided factual background for the motion. There is nothing unusual or improper about the filing of the Linares Declaration in support of the motion for leave to file immediate

---

[18] Mr. Linares closes his declaration with the following, before his signature: "I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct." *Linares Decl.* at 11.

[19] The Defendants' reliance on Rule 43(c) is misplaced. Rule 43(c) is discretionary. A motion to quash is within Rule 43(c), but so is a motion for summary judgment. 8 James Wm. Moore et al., *Moore's Federal Practice – Civil* § 43.05[1] (Matthew Bender & Co. 2008). But, this does not mean that the parties are entitled to a testimonial hearing for either motion. *Young v. City of Augusta ex rel. DeVaney*, 59 F.3d 1160, 1170 (11th Cir. 1995) (noting that oral testimony on a motion for summary judgment is disfavored). Furthermore, because Rule 43(c) allows a court to consider hearsay in the form of affidavits and depositions when deciding a motion within its scope, the rule undermines the Defendants' argument that Federal Rule of Evidence 802 excludes the Linares Declaration as hearsay.

discovery and if the Defendants wished to present evidence by affidavit or declaration in their motion to quash that contradicted the Linares Declaration, they would have been free to do so.

Nonetheless, the Defendants forcefully argue that the Court cannot grant a motion based on inadmissible material, whether contained in an affidavit, declaration, or some other submission. *Defs.' Surreply* at 2. In support, the Defendants cite Federal Rule of Evidence 1101, which makes the Federal Rules of Evidence generally applicable to "civil actions and proceedings." Fed. R. Evid. 1101(b). Noting that Rule 1101 also lists certain proceedings where the rules of evidence do not apply, they observe that an *ex parte* motion for expedited discovery is not among the excepted proceedings. Fed. R. Evid. 1101(d).

But, subsection (d) does not "represent an exclusive and exhaustive list." *United States v. Zannino*, No. 83-235-N-3, 1985 U.S. Dist. LEXIS 19184, at \*9 (D. Mass. June 5, 1985); 31 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 8077, at 620 (2000) (stating that "[s]ubdivision (d) is not a complete list of the situations in which the Evidence Rules are inapplicable"); *see UAW v. Gen. Motors Corp.*, 235 F.R.D. 383, 386-87 (E.D. Mich. 2006) (concluding that a "fairness hearing" in a class action lawsuit is not subject to the rules of evidence, since it is not a trial). Thus, although not referenced in Rule 1101(d) as excepted proceedings, the First Circuit has observed that "[a]ffidavits and other hearsay materials are often received in preliminary injunction proceedings." *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986). As the First Circuit stated, with regard to hearsay materials in support of a motion for injunctive relief, "[t]he dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding." *Id.*

A motion for leave to take an immediate deposition and a responsive motion to quash or modify, though they may have important ramifications in this case, are not nearly as significant as a dispositive motion or a motion for preliminary injunction in which the rules of evidence do not apply.  The Court finds the contents of the Linares Declaration relevant and appropriate given the nature of the relief requested, and the Court denies Defendants' motion to strike.[20]

### 2.    Allegations of MediaSentry's Unlawful Conduct

Defendants claim that the Court never should have authorized the subpoena because the facts Plaintiffs provided in support of their discovery motion were gathered by allegedly criminal acts of MediaSentry, Plaintiffs' investigator.  Maine law prohibits persons from acting as private investigators without first obtaining a license; acting as a private investigator without a license is a class D crime.  32 M.R.S.A. §§ 8104(1), 8114.  The Defendants argue that the Court should disregard the Linares Declaration because there is evidence MediaSentry employees may be unlicensed in Maine and elsewhere.  *See Mot. to Vacate, Quash, and Disc.* at 3-4; *Fletcher Aff.* (stating that a representative of the Maine Department of Public Safety has confirmed that certain alleged MediaSentry employees are not licensed private investigators in Maine); *Mot. of Doe 10 [CV-08-28-B-W] to Vacate Ex Parte Disc. Order, to Quash the Subpoena and to Take Disc.* at Ex. B (Docket # 71-3) (Commonwealth of Massachusetts, Department of State Police, cease and

---

[20] A motion to strike material that is neither (1) part of a pleading under Rule 7, nor (2) "redundant, immaterial, impertinent, [or] scandalous," under Rule 12(f) may not be on firm procedural footing.  *See Boreri v. Fiat S.P.A.*, 763 F.2d 17, 23 (1st Cir. 1985) ("[A] motion [to strike] may be employed . . . only to obtain relief from 'redundant, immaterial, impertinent, or scandalous matter.' . . . And, such motions are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion.") (quoting Fed. R. Civ. P. 12(f)); *cf.* D. Me. Loc. R. 56(e) (providing that "[m]otions to strike statements of fact are not allowed," even in response to a motion for summary judgment, where affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated," Fed. R. Civ. P. 56(e)(1)).  The Defendants' proper remedy may be to produce their own declaration or affidavit setting forth contradictory facts, not just facts to undercut the Plaintiffs' investigators, in support of their motion to quash the subpoena.  *See Mot. of Doe 10 [CV-08-28-B-W] to Vacate* Ex Parte *Disc. Order, to Quash the Subpoena and to Take Disc.* at Ex. A (Docket # 71-2) (*Fletcher Aff.*).

desist order, dated January 2, 2008, directing MediaSentry to stop conducting investigatory activities until licensed by the Commonwealth).

Magistrate Judge Kravchuk considered a similar issue in *TNT Rd. Co. v. Sterling Truck Corp.*, and declined to preclude a private investigator from testifying at trial on the basis of possible violations of Maine's licensing statute. No. 03-37-B-K, 2004 U.S. Dist. LEXIS 13463, at *6 n.2 (D. Me. July 19, 2004). The Defendants distinguish *Sterling Truck* by citing *Donegal Mut. Ins. Co. v. White Consol. Indus.*, 153 Ohio App. 3d 619, 2003 Ohio 4202, 795 N.E.2d 133. Interpreting a similar state licensing statute in *Donegal*, the Ohio Court of Appeals concluded that the trial court erred in allowing unlicensed fire investigation experts to testify at trial as to the cause of a house fire in a products liability case. 153 Ohio App. 3d at 620, 2003 Ohio 4202, ¶ 7, 795 N.E.2d at 134. Although the state statute did not expressly prohibit the testimony of an unlicensed fire investigator, the *Donegal* court relying on precedent concluded that the "legislature has clearly stated the public policy that investigations as to the cause of fires are to be done only by those licensed to do so." *Id.* at 620, 2003 Ohio 4202, ¶ 8, 795 N.E.2d at 134.

The Court is unconvinced. First, Magistrate Judge Kravchuk was aware of *Donegal* and rejected it.[21] *See* Motion in Limine at **6, *TNT Rd.*, 2004 U.S. Dist. LEXIS 13463 (D. Me. July 19, 2004) (No. 03-37-B-K), 2004 U.S. Dist. Ct. Motions LEXIS 17415. Magistrate Judge Kravchuk was interpreting the same Maine statute at issue here and the Court finds her view more convincing than *Donegal*.

---

[21] Here, the private investigation consisted of logging onto peer-to-peer networks and conducting internet searches to determine whether the Internet Protocol addresses offering music files for distribution were infringing the Plaintiffs' copyrights. Maine law broadly defines "private investigator" as "any person who, for any consideration whatsoever . . . makes any investigation to obtain, information with reference to . . . [e]vidence to be used before any court." 32 M.R.S.A. § 8103(5)(E). This statute clearly applies to a traditional private investigator, who is physically present in the state of Maine and performs an on-the-ground investigation, but the statutory language is sufficiently broad to capture activity that would not ordinarily be considered to be a private investigation. The Court assumes, but does not decide that this statute applies to internet searches of the type described in the Linares Declaration.

Second, here, the Court is not addressing the *Donegal* question of whether an unlicensed expert should be allowed to testify at trial.  The Linares Declaration only sought to justify the deposition of a third party, which the Plaintiffs contend has information relevant to the case.  Significantly, the Defendants nowhere assert that the University does not have access to the information the Plaintiffs seek.  Instead, they assert that because the private investigators are unlicensed in Maine, the Court should not merely exclude their testimony at trial, but should forbid the Plaintiffs from using the standard tools of discovery to find out whether the University has any discoverable information.

Finally, the Court cannot determine from Defendants' motions exactly which portions of the Linares Declaration are products of suspect investigatory activity, as opposed to expressions of general technological familiarity or the result of internet searches that could be undertaken by any reasonably sophisticated user.  *Compare Mot. to Vacate, Quash, and Disc.* at 3 (claiming that "much of the Linares declaration, especially the paragraphs that set out the basis for plaintiffs' claims of copyright infringement, is based on the unlicensed and therefore illegal misconduct of MediaSentry"), *and Mot. to Strike* at 4 ("Every assertion in ¶¶ 11-15 [of the Linares Declaration] about what MediaSentry learned is inadmissible hearsay."), *with Linares Decl.* ¶ 12 (discussing general architecture of peer-to-peer file-sharing networks).  For example, it cannot be correct that it requires a private investigation to determine that the University of Maine is the Doe Defendants' ISP, that some persons using that ISP are perhaps using online media distribution systems, such as Gnutella, and that a peer-to-peer file sharing network allows users to reproduce and distribute copyrighted works anonymously.  In short, the Court is not satisfied (1) that Defendants have identified with sufficient particularity those sections of the Linares Declaration that are arguably "tainted" by MediaSentry's allegedly unlicensed

27

investigations, or (2) that it should refuse to consider the Linares Declaration because MediaSentry is alleged to have conducted unlicensed investigations.

### B. Plaintiffs Were Not Equitably Entitled to the *Ex Parte* Order for Expedited Discovery

In their second argument, the Defendants claim that the Plaintiffs failed in their *ex parte* discovery motion to establish their equitable entitlement to expedited discovery. Defendants ask the Court to "make a good cause determination and . . . consider whether [Plaintiffs show] irreparable harm without the discovery, [Plaintiffs'] likelihood of success on the merits, the burden of discovery on [Defendants], and the degree of prematurity." *Mot. to Vacate, Quash, and Disc.* at 5 (citing *McMann v. Doe*, 460 F. Supp. 2d 259, 265 (D. Mass. 2006)). The Court construes this as a request for *de novo* review of the magistrate judge's discovery order. The Federal Magistrate Act, 28 U.S.C. § 631 *et seq.*, and the First Circuit, however, unequivocally mandate that "[a] magistrate's discovery order may be set aside where the order is clearly erroneous or contrary to law." *United States v. Garcia*, 983 F.2d 1160, 1166 (1st Cir. 1993) (citing 28 U.S.C. § 636(b)(1)(A)). Assuming that Plaintiffs must make some showing of good cause before a court may lift the Rule 26(d)(1) bar to pre-conference discovery,[22] the Court determines that the magistrate judge's decision to allow the discovery was neither clearly erroneous nor contrary to law.

Although *McMann* may have illuminated the pre-conference discovery question that initially faced the Court in the fall of 2007, it has little bearing on whether to allow the deposition of a third party one year after the complaint was filed. Although it is true that a Scheduling Order has still not issued, the Local Rule mandates that a Scheduling Order be issued

---

[22] *Warner Bros. Records Inc. v. Does 1-6*, 527 F. Supp. 2d 1, 2 (D.D.C. 2007); *McMann*, 460 F. Supp. 2d at 265; *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 614 (D. Ariz. 2001); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2046.1, at 592 (2d ed. 1994).

"in no event more than 120 days after the filing of the complaint."  D. Me. Loc. R. 16.2(d).

Because the Doe Defendants have not been identified and thus not served, a Scheduling Order

has not yet issued.  Nevertheless, with the issuance of this Order, the University's deposition will

presumably move forward, the Doe Defendants will be identified, and a Scheduling Order will

issue.  It seems hyper-technical to deny discovery today, based on arguments that will be

obviated.[23]  Finally, it is of course the Doe Defendants themselves who have by their objections

and motions prevented thus far the University's deposition and the issuance of a timely

Scheduling Order.  It seems ironic that they would claim prejudice from the delay they caused.

The magistrate judge's decision to allow the requested discovery was neither clearly

erroneous nor contrary to law.  Accordingly, the Court need not decide whether, under FERPA,

20 U.S.C. § 1232g, the information Plaintiffs seek is "personally identifiable information,"

release of which requires a court order or subpoena, or "directory information," which may be

released without such process.  Because Defendants have been given notice of the subpoena and

an opportunity to challenge it, release of the requested information by the University in

---

[23] Under *McMann*, the Court would order the University deposition.  According to *McMann*, a court should permit pre-conference discovery only after weighing "the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity."  *McMann*, 460 F. Supp. 2d at 265.  In their motion, Plaintiffs explained the purpose of the discovery, namely that they sought Defendants' identities in order to vindicate their rights under the Copyright Act.  *Disc. Mot.* at 1-2.  Arguing that a copyright owner who alleges a claim of infringement has demonstrated irreparable harm as a matter of law, Plaintiffs claimed that the expedited discovery will enable them to prevent Defendants' continued infringement.  *Id.* at 3-4, 6-7 (citing *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1041-42 (8th Cir. 2003); *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 66 (2d Cir. 1996)).  Plaintiffs also demonstrated why they are likely to succeed on the merits of their claims.  In the Linares Declaration, Plaintiffs explained that they have collected evidence of infringing activity, that they accessed copyrighted song recordings stored on Defendants' computers, and that they believe these recordings were downloaded without their permission.  *Id.* at 8-9.  With respect to the burden of discovery on Defendants, Plaintiffs properly pointed out that the subpoena not only will be directed to the University of Maine, a third party, but also will provide that "each Defendant will be able to raise any objections before this Court in the form of a motion to quash prior to the return date of the subpoena."  *Id.* at 9.  Finally, Plaintiffs alleged that their request in advance of a discovery conference was in no sense premature; indeed, before execution of the subpoena, no conference could possibly be convened. *Id.* at 8.

accordance with the Court's October 24, 2007 Order is consistent with the University's obligations under FERPA.

### C.      Defendants Request for Unilateral Expedited Discovery

The Defendants finally suggest that they, too, are entitled to pre-conference discovery. Moreover, they argue that the orders staying execution of the University subpoena should remain in place until their discovery is completed because they believe renewed motions to quash or dismiss, supported by newly discovered facts, will be successful if the current ones are not. Candidly acknowledging that their request, like Plaintiffs', is subject to the *McMann* "good cause" factors, Defendants claim that they will suffer irreparable harm if their identities are discovered and they are forced to litigate the merits of Plaintiffs' claims. The Court does not agree. "Irreparable harm most often exists where a party has no adequate remedy at law." *Charlesbank Equity Fund II, Ltd. P'ship v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). Once unmasked, Defendants presumably will have at their disposal all applicable legal defenses, both substantive and procedural. These defenses have not been shown or even claimed to be inadequate. Indeed, it is very doubtful that being named in a civil suit is to be irreparably harmed as the *McMann* factors contemplate.

Regarding the Defendants' request to be allowed to complete discovery before the Scheduling Order issues, as with other matters, the march of time has affected the Defendants' claim. Once the University deposition is completed, the Scheduling Order will issue and the parties are free to bring to the Court's attention any discovery issues that require special attention or to request a scheduling conference. *See* D. Me. Loc. R. 16.2(e). The Court finds unconvincing the Defendants' claims that they must be allowed to complete discovery before the

Plaintiffs depose the University, especially in this unique circumstance where the Doe Defendants have not yet been served.

Because Defendants have failed to demonstrate that there is good cause to grant their motion for expedited discovery, the Court denies their motion.

## III.    RULE 11 MOTION FOR SANCTIONS

Defendants argue that Plaintiffs violated Rule 11 by filing a complaint "solely for the improper purpose of obtaining discovery of confidential educational records," *Sanctions Mot.* at 1, in violation of Rule 11(b)(1),[24] and by joining all Plaintiffs and all Defendants in one action without "good faith evidentiary support" for such joinder under Rule 20 in violation of Rule 11(b)(3).[25] *Sanctions Mot.* at 1.

The Court is perplexed by the Defendants' first claim.  They start with the proposition that "[i]f a complaint is not filed to vindicate a plaintiff's rights in court, its purpose is improper per se," and it therefore does exactly what Rule 11(b)(1) proscribes.  *Sanctions Mot.* at 2.  The Defendants further reason that because Plaintiffs do not know the identities of the Defendants, the Plaintiffs cannot possibly hope to vindicate their rights until these identities are discovered.  *Id.* at 3.  The Defendants conclude that the Plaintiffs' only possible purpose in filing this suit must be to discover identifying information, not to vindicate their rights, all in violation of Rule 11(b)(1).  *Id.*

---

[24] Rule 11(b)(1) provides that

> [b]y presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

Fed. R. Civ. P. 11(b)(1).

[25] Rule 11(b)(3) provides that

> [b]y presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(3).

However, simply because the Plaintiffs' first step in this lawsuit was to move for expedited discovery does not make their purpose for commencing it either improper or unrelated to vindicating their rights under the Copyright Act.  After all, it is undisputed that without such discovery, the Plaintiffs have no hope of vindicating their rights.

The only way the Defendants' argument has any force is to assume that the Plaintiffs' access to the identifying information itself is somehow "improper" in the Rule 11(b)(1) sense.  The Court is unwilling to make this assumption; indeed, the Court has decided it is proper for Plaintiffs to discover this information.  *See supra* Part II.B.  On two occasions, the Defendants' own arguments belie this supposition:  "Plaintiffs' sole purpose . . . is to . . . seek immediate discovery that would *otherwise* be protected by [FERPA]," *Sanctions Mot.* at 3 (emphasis added); Plaintiffs' use of a Complaint "to gain access to *otherwise* shielded information . . . supports a finding of improper purpose."  *Id.*  The Court does not share the Defendants' view that a litigant's animating purpose becomes improper under Rule 11(b)(1) by merely engaging the judicial machinery in pursuit of a necessary and proper remedy, *otherwise* out of reach, whether by expedited discovery order or other preliminary relief.

The Defendants' second claim, that Plaintiffs have no "good faith evidentiary support" for joining Plaintiffs and Defendants in this case, relies on a misreading of Rule 11(b)(3) that they borrowed, it appears, from the magistrate judge's recommendation for a show cause order.[26]  For the Defendants to gain any traction, they must point the Court to factual contentions for which Plaintiffs lack evidentiary support.  The Defendants, like the magistrate judge, suggest that allegations of conformity with the permissive joinder requirement are factual allegations that require evidentiary

---

[26] The magistrate judge took Plaintiffs to task for appearing to run afoul of Rule 11(b)(3), which she quoted as requiring "that a representation in a pleading have evidentiary support."  *Rec. Dec.* at 11 n.5; *but see* Fed. R. Civ. P. 11(b)(2)-(3) (distinguishing between "factual contentions" and "legal contentions," and requiring "evidentiary support" only of the former, and allowing "legal contentions [to pass if] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law").  In the magistrate judge's view, Plaintiffs' allegation that their claims "arise[] out of the same series of transactions or occurrences," *Compl.* ¶ 20, are factual contentions that require evidentiary support.  The Court disagrees.

support, which Plaintiffs do not have.[27]   At the same time, however, the Defendants do not believe that Plaintiffs' factual contentions—that Defendants belonged to the same file sharing network and engaged in copyright infringement by similar means—"create the common nexus of facts required to meet the transaction test set forth in Rule 20." *Sanctions Mot.* at 9.  The Defendants cannot have it both ways:  the Rule 20(a) requirements are either factual matters or legal tests.

The Court is not alone in finding that the "transaction test" is what Defendants think it is, a legal test:  "The transaction and common-question requirements prescribed by Rule 20(a) are not rigid tests.  They are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy."  Wright, Miller & Kane § 1653, at 415; *cf. Abdullah v. ACandS, Inc.*, 30 F.3d 264, 269 n.5 (1st Cir. 1994) (approving of another court's application of the "same transaction or occurrence test" to a set of facts similar to those before the *ACandS* court).  Accordingly, while Plaintiffs' factual allegations may or may not support the legal contention that the transaction test is satisfied, the Court will not sanction Plaintiffs for making legal contentions in their Complaint and denies Defendants' motion for sanctions.

## IV.   CONCLUSION

The Court concurs with the recommendation of the United States Magistrate Judge for the reasons set forth in her Recommended Decision and for the reasons set forth in Part I *supra* that the motions to dismiss should be denied, and determines that no further proceeding is necessary.

---

[27] In their Complaint, Plaintiffs allege that

> each Defendant [has] . . . committed violations of the same law (e.g., copyright law), by committing the same acts (e.g., the downloading and distribution of copyrighted sound recordings owned by Plaintiffs), and by using the same means (e.g., a file-sharing network) that each Defendant accessed via the same ISP.  Accordingly, *Plaintiffs' right to relief arises out of the same series of transactions or occurrences, and there are questions of law or fact common to all Defendants such that joinder is warranted and appropriate here.*

*Compl.* ¶ 20 (emphasis added).

The Court AFFIRMS the Recommended Decision of the Magistrate Judge (Docket # 39). The Court DENIES Defendants Doe 2, 3, 6, 7, 8, 15 & 23 Motion to Dismiss for Failure to State Claim (Docket # 10); Defendant Does #16's and #18's Motion to Dismiss (Docket # 18); and Motion of Defendant Doe 10 to Dismiss for Failure to State a Claim (Docket # 69) (originally filed in CV-08-28-B-W).

In accordance with Part II.A.1 *supra*, the Court DENIES the Motion of Does 2, 3, 6, 8, 15 & 23 to Strike the Declaration of Carlos Linares (Docket # 62); and the Motion of Doe 10 to Strike the Declaration of Carlos Linares (Docket # 70) (originally filed in CV-08-28-B-W).

In accordance with Part II *supra*, the Court DENIES the Motion to Quash Subpoena filed by Doe 10 (Docket # 8); the Motion of Does 2, 3, 6, 8, 15 & 23 to Vacate *Ex Parte* Discovery Order, to Quash the Subpoena and to Take Discovery (Docket # 63); and the Motion of Doe 10 to Vacate *Ex Parte* Discovery Order, to Quash the Subpoena and to Take Discovery (Docket # 71) (originally filed in CV-08-28-B-W).

In accordance with Part III *supra*, the Court DENIES Defendant Does #16 and #18's Motion for Sanctions Pursuant to Rule 11 (Docket # 56).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 29th day of October, 2008